## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| ROSA BAHTA, | ) |
| | ) |
| Plaintiff, | )    Case No. 1:15-cv-89 |
| | ) |
| v. | )    Hon. Liam O'Grady |
| | ) |
| RENAISSANCE HOTEL OPERATING | ) |
| COMPANY, ET AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>Memorandum Opinion</u>

Rosa Bahta, a long-time employee of the Renaissance Washington, DC Downtown Hotel, sued after she was terminated in the wake of a violent altercation with another employee. Pending before the Court is Defendant Renaissance Hotel Operating Company's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Ms. Bahta's motion for leave to file an untimely responsive pleading. (Dkt. Nos. 16, 21). Pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7(J), the Court will dispense with an oral hearing and rule on the briefs submitted. For the reasons that follow, the Court will consider Ms. Bahta's late-filed opposition, treat Defendant's motion as one for summary judgment, and grant that motion.

## I.     Background

The Renaissance Washington, DC Downtown Hotel ("Renaissance") employed Rosa Bahta for more than twenty years. On December 21, 2013, a fellow employee, Desta Araya, attacked Bahta and she suffered injuries as a result. After the altercation, Bahta alleges that Renaissance staff instructed her not to call 911, but to instead report the incident to hotel

security. Bahta Aff. ¶ 4.  Bahta also alleges that Araya had a long history of abusing his co-workers and that Renaissance had failed to discipline or otherwise deter him.  In her affidavit, Bahta recalls that Araya "exhibited ill will" toward her on approximately ten to fifteen different occasions.  *Id.* ¶ 3.  She reported this "bad blood" to a supervisor and requested that she be separated from Araya, but the request was denied.  *Id.*

On January 11, 2014, Renaissance terminated Bahta, for what Bahta believes was "without cause and because she was a victim of that crime."  Am. Compl. ¶ 7.  Bahta appealed the termination decision to a Peer Review Panel.  Bahta Aff. ¶ 1.  On January 23, the panel issued a letter affirming the termination decision.  Bahta Aff., Ex. 1.

At the time of her termination, Bahta was fifty-five years old.  In the time since she was fired, she has not had an income and has been "treated by various medical professionals for severe, continuing physical, mental, and emotional injuries."  Bahta Aff. ¶ 10.  Bahta did file a complaint with the Washington, D.C. Department of Employment Services ("DOES") Office of Workers' Compensation, which resulted in an $85,000 lump-sum payment.  Ex. C, Def.'s Mtn. Summ. J.

Bahta filed this federal action on January 23, 2015 and subsequently filed an amended complaint on October 2, 2015.  (Dkt. Nos. 1, 10).  On December 2, 2015, Renaissance moved to dismiss the complaint or, alternatively, for summary judgment.  (Dkt. No. 16).  Renaissance attached three exhibits to its motion.  Exhibit A is a copy of the hotel's employee handbook, dated August 2013.  Exhibit B is Ms. Bahta's executed "Acknowledgement of the Renaissance Washington D.C. Hotel Policies" dated April 24, 1996.  Exhibit C is a copy of DOES' approval of the $85,000 lump-sum worker's compensation payment.

On January 15, 2016, Bahta filed an opposition as an attachment to her motion for leave to file an untimely opposition. (Dkt. No. 21). Included with the opposition is an affidavit from Bahta and the letter from Renaissance's Peer Review Panel affirming the termination decision. Renaissance has opposed the untimely opposition. (Dkt. No. 22).

## II.    Plaintiff's Delay in Filing a Responsive Pleading

Federal Rule of Civil Procedure 6(b)(1)(B) permits courts to extend deadlines on a motion made after the time to file has expired upon finding good cause and excusable neglect. In determining whether excusable neglect exists, the Court considers: (1) "the danger of prejudice to the [nonmoving party]," (2) "the length of delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

While counsel's suggestion that his busy schedule preparing for "other intervening court deadlines" is not an adequate justification for the delay, counsel has also represented to the Court that "additional time [was] necessitated by Plaintiff and her Counsel having different native tongues." (Dkt. No. 21, at 2). Indeed, most of the arguments in Ms. Bahta's opposition rely on her seven-page affidavit.

While the reason for delay may not present extraordinary circumstances, the Court finds that the remaining factors provide a sufficient counterbalance to any deficiency in the cause for delay. First, there is no prejudice to the nonmoving party. In its opposition, Renaissance explains its concern is that the Court's acceptance of the late-filed opposition will require devoting additional resources to a reply brief or alternatively, will cause postponement of oral argument. The Court has dispensed with an oral hearing, however, and this decision will issue

3

close in time to the date that the previously scheduled hearing was set to occur. Moreover, the Court does not believe a reply brief is needed. In fact, it is to Renaissance's benefit for the Court to consider the opposition because it is the opposition and the documents attached that confirm judgment in favor of Renaissance is warranted. Second, while the delay was nearly a month, it will have no impact on the proceedings for the reasons already explained. Finally, the Court finds an absence of bad faith. In sum, the Court finds cause exists to consider the late filing.

III.     **Defendant's Motion to Dismiss or Alternatively for Summary Judgment**

A.     Standard of Review

Renaissance has moved alternatively under Federal Rules of Civil Procedure 12(b)(6) and 56. The Court finds it appropriate to treat Renaissance's motion as one for summary judgment for several reasons. First, the motion is captioned in the alternative and therefore "[b]ased upon the caption alone, [Bahta is] on notice that this motion might be treated as one for summary judgment." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998). Second, Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). As outlined above, Renaissance attached three exhibits to its motion and thus, "by operation of the Federal Rules of Civil Procedure, [Bahta is] on notice that the . . . motion could be considered by the court to be a summary judgment motion." *Laughlin*, 149 F.3d at 261. Finally, Bahta captioned her opposition as an "Opposition to Defendants' Motion to Dismiss, or Alternatively for Summary Judgment" and attached a supporting affidavit and exhibit. Thus, her "own actions" also demonstrate notice. *Id.*; *see also Tsai v. Md. Aviation*, 306 F. App'x 1, 5 (4th Cir. 2008) (finding no lack of notice when plaintiff acknowledged the possibility of summary

4

judgment "in the title of his responsive pleading and even put additional evidence before the court of his own volition"). In sum, the Court finds Bahta is on notice of the possibility of the Court treating the motion as one for summary judgment and that Bahta had "a reasonable opportunity to present all material made pertinent to the motion." Fed. R. Civ. P. 12(d). Notably, at no time has Bahta asserted that additional discovery is necessary in order to justify her opposition. *See O'Dell v. Deutsche Bank Nat'l Trust Co.*, No. 1:12-CV-985, 2013 WL 2389874, at *8 (E.D. Va. May 30, 2013) ("[T]he Fourth Circuit has held that the nonmoving party cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery or moved for a continuance to permit discovery before the district court ruled.").

In considering a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2010) (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam)) (internal quotation marks omitted). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *McAirlaids, Inc.*, 756 F.3d at 310.

B.     Breach of Contract (Count I)

Count I of the Amended Complaint alleges that Renaissance "breached their contract of employment by wrongfully terminating Plaintiff and various other acts of bad faith." Am. Compl. ¶ 14. The law of the District of Columbia governs this contract claim because Washington, D.C. is the place of performance. *See Elite Entm't Inc. v. Khela Bros. Entm't Inc.*,

5

396 F. Supp. 2d 680, 692 (E.D. Va. 2005) (noting that under Virginia choice of law rules, "the law of the place of performance" governs contract performance issues). "In the District of Columbia, all employment is at-will 'unless a contrary contractual intent is clearly expressed.'" *Grove v. Loomis Sayles & Co., L.P.*, 810 F. Supp. 2d 146, 149 (D.D.C. 2011) (quoting *Turner v. Fed. Express Corp.*, 539 F. Supp. 2d 404, 410 (D.D.C. 2008)) (alteration omitted); *see also Peterson v. AT&T Mobility Servs., LLC*, No. 14-439, 2015 WL 5692822, at *4 (D.D.C. Sept. 28, 2015) ("Under District of Columbia law, employment is presumed to be terminable at will by either party, and the presumption is rebuttable by a showing that the parties intended that termination to be subject to specific preconditions." (internal quotation marks omitted)). While "personnel and policy manuals may create contractual rights," *Peterson*, 2015 WL 5692822, at *4, a "handbook is not enforceable as an employment contract if it disclaims the establishment of contractual obligations and explicitly provides that employment may be terminated at-will." *Grove*, 810 F. Supp. 2d at 149 (citing *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 806 (D.C. 2003), and *Boulton v. Inst. of Int'l Educ.*, 808 A.2d 499, 505 (D.C. 2002)).

Bahta does not identify, either in the Amended Complaint or in her responsive pleading, a specific contract or contract provision that was breached. Instead, she vaguely asserts that it is reasonable to infer from the fact that she worked for Renaissance since 1993 that an employment contract existed. Am. Compl. ¶ 2. She also points to language in her affidavit regarding Renaissance's "termination of my employment contract" as evidence of the contract's existence. Bahta Aff. ¶ 15. These unsubstantiated conclusions are insufficient to establish that a contract existed or to overcome the presumption that Bahta's employment was at will.

Moreover, Renaissance has provided a copy of its 2013 employee handbook. In the introduction, the handbook states that "[t]he contents of this handbook are presented as a matter

6

of information and do not create or constitute a contract, expressed or implied, between Marriott International, its hotels or any of its associates." Ex. A at 4, Def.'s Mtn. Summ. J. Under the heading "Conditions of Employment," the handbook further states: "I have the right to terminate my employment at any time and my employer retains a similar right," and "[t]he contents of this handbook and all Company manuals dealing with employment policies are presented as a matter of information only and are not to be understood or construed as a promise or contract between Marriott and its associates." *Id.* at 28, ¶¶ 12–13. Renaissance also provided Bahta's executed "Acknowledgement of the Renaissance Washington D.C. Hotel Policies," which asserts: "I understand the rules, policies and benefits contained in the Employee Handbook may be changed, modified or deleted at any time, and that neither this handbook nor any other communication by a management representative is intended, in any way, to create a contract of employment for a specified term." Ex. B. at 1, Def.'s Mtn. Summ. J.

Thus, Renaissance has established the absence of a material fact with regard to the existence of an express or implied employment contract. Bahta's only argument in response is that the handbook language "neither disclaims that a contract existed or that one arose verbally or otherwise, in contrast to the by 'the contents of this handbook.'" Pl.'s Opp'n at 5. She presents no specific facts, however, that explain how or when another contract "arose verbally or otherwise" that might have modified her at-will status in some way. The Court finds there is no genuine issue of material fact as to whether Bahta was an at will employee who could be terminated "at any time and for any reason, or for no reason at all." *Jackson v. Pub. Co. Accounting Oversight Bd.*, 858 F. Supp. 2d 65, 69–70 (D.D.C. 2012) (quoting *Adams v. George W. Cochran & Co., Inc.*, 597 A.2d 28, 30 (D.C. 1991)).

Bahta argues that even if she was an at-will employee, her termination is nonetheless actionable because it falls within the narrow exception to the at-will doctrine for wrongful terminations in violation of public policy. The D.C. Court of Appeals recognized "a very narrow exception" in *Adams v. George W. Cochran & Co., Inc.*, 597 A.2d 28, 34 (D.C. 1991), "for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." Later, in *Carl v. Children's Hospital*, 702 A.2d 563 (D.C. 1997) (en banc), the court "expanded this exception somewhat . . ., holding that circumstances other than outright refusal to break the law would justify the exception if the employee was fired after acting in furtherance of a public policy 'solidly based on a statute or regulation that reflects the particular public policy to be applied, or (if appropriate) on a constitutional provision concretely applicable to the defendant's conduct.'" *Leyden v. Am. Accreditation Healthcare Comm.*, 83 F. Supp. 3d 241, 248 (D.D.C. 2015) (quoting *Carl*, 702 A.2d at 163 (Terry, J., concurring)). Thus, to make a claim for a public policy exception, a plaintiff must first show that he was acting in furtherance of a public policy "solidly based on a statute or regulation that reflects the particular public policy to be applied, or (if appropriate) on a constitutional provision concretely applicable to the defendant's conduct." *Carl*, 702 A.2d at 163 (Terry, J., concurring). And second, the plaintiff must demonstrate a "close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination." *Id.* at 164.

Bahta identifies three purported "public policy violations": (1) that "Defendants or their agents directed Plaintiff not to report the attack to police authorities"; (2) "that Defendants encouraged criminal and tortious behavior of the attacker . . . violat[ing] the public policy that an employer maintain a safe, non-hostile workplace for its employees"; and (3) "intentional violations of Federal and DC discrimination statutes, and the public policies motivating such

statutes." Pl.'s Opp'n at 6–7. The first two alleged violations fail because Bahta does not identify a "clear mandate of public policy" by citing a statute, regulation, or constitutional provision. *Cf. Hoskins v. Howard Univ.*, 839 F. Supp. 2d 268, 281 (D.D.C. 2012) ("[S]he points to no statute or municipal regulation in support of her claim, and the public policy exception to the at-will doctrine must be *solidly based* on a statute or regulation that reflects the public policy to be applied . . . ." (internal quotation marks omitted)).

The third does so only vaguely. At other points in her briefing, Bahta cites Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the District of Columbia Human Rights Act ("DHCRA"), D.C. Code § 2-1401.01 *et seq.* Assuming these are the mandates of public policy to which Bahta is referring, her claim still fails. A plaintiff may not rely on a public policy that "is already protected by another statute." *Jones v. D.C. Water & Sewer Auth.*, 943 F. Supp. 2d 90, 94 (D.D.C. 2013). Both the DHCRA and Title VII create a private cause of action for discriminatory conduct and wrongful termination in the employment context. *See Kassem v. Washington Hosp. Ctr.*, 513 F.3d 251, 254 (D.C. Cir. 2008) ("[T]he D.C. Court of Appeals held the exception unavailable 'where the very statute creating the relied-upon public policy already contains a specific and significant remedy for the party aggrieved by its violation.'" (quoting *Nolting v. Nat'l Capital Grp., Inc.*, 621 A.2d 1387, 1390 (D.C.1993)); *LeFande v. Dist. of Columbia*, 864 F. Supp. 2d 44, 50 (D.D.C. 2012) ("Even where there is a showing of a clearly identifiable policy, the D.C. Court of Appeals has refused to find new exceptions to the doctrine of at-will employment where the legislature has already creat[ed] a specific, statutory cause of action to enforce the public policy at issue." (internal quotation marks omitted)); *Hoskins*, 839 F.Supp.2d at 280–81 (holding that "insofar as the plaintiff seeks to rely on the anti-retaliation provisions of Title VII or the [DCHRA] as the statutory basis for her

wrongful discharge claim for alleged retaliation . . ., that reliance is unavailing; those statutes provide their own express remedies for such misconduct and therefore cannot serve as predicates for a common law wrongful discharge claim"). Thus, Bahta has not identified a public policy that can form the basis of a wrongful termination claim.

For these reasons, Renaissance is entitled to judgment as a matter of law on the breach of contract and wrongful termination claims.

C.    Civil Rights Claims (Count II)

Count II, titled "Violations of Statutory Prohibitions Against Civil Rights and Non-Discrimination Laws," alleges that Renaissance "terminated, discriminated, and otherwise treated Plaintiff in a fashion that was different from their treatment of other male, female, younger, and racially-different employees." Am. Compl. ¶ 18. The Amended Complaint does not specify any "statutory prohibitions," but in her opposition Bahta contends they "include and are not limited to Title VII and DHCRA." Pl.'s Opp'n at 7. Renaissance argues that summary judgment is appropriate on the Title VII claim(s) because Bahta did not exhaust her administrative remedies and on the DHCRA claim(s) because the suit was filed outside the statute's one-year limitations period. Renaissance is correct on both fronts.

"Before a plaintiff may file suit under Title VII or the ADEA, he is required to file a charge of discrimination with the EEOC." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). It is undisputed that Bahta did not exhaust her administrative remedies by filing a charge with the EEOC before pursuing this lawsuit. Instead, Bahta contends, "Plaintiff should be excused from being required to file an EEOC Complaint in order to 'exhaust administrative remedies' with respect to her discrimination claims, since Defendants did not advise her, and her

competent counsel in making her workman's compensation claim did not advise her, of any such 'exhaustion' procedures." Pl.'s Opp'n at 7.

Bahta misunderstands the importance of the exhaustion procedure. It is not "a mere formality; exhaustion is an integral part of the enforcement scheme for [Title VII]." *Tomasello v. Fairfax Cty.*, No. 1:15-CV-95, 2016 WL 165708, at *5 (E.D. Va. Jan. 13, 2016). "Specifically, by channeling allegations of discrimination through the EEOC in the first instance, the exhaustion doctrine operates to provide employers with notice of the alleged violations and to allow the EEOC to use administrative conciliation to address and, where appropriate, to remedy any violations more quickly and inexpensively than may be typically accomplished through litigation." *Id.*; *see also Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013) ("[T]he charge itself serves a vital function in the process of remedying an unlawful employment practice.").

Nor does the Court have the authority to excuse Bahta's failure to exhaust administrative remedies. Exhaustion is jurisdictional. "[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Jones*, 551 F.3d at 300. Accordingly, the Court is without jurisdiction over Bahta's Title VII claim(s) and must dismiss the count without prejudice.[1] *See Laber v. Harvey*, 438 F.3d 404, 414 n.5 (4th Cir. 2006) (stating that if a district court lacks subject matter jurisdiction, "the proper course" is to "dismiss the claim instead of granting summary judgment on it"); *see also S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) (stating that a dismissal based on a jurisdictional defect "must

---

[1] For the same reason the Court denies Bahta's request in her pleading that she be allowed to file a second amended complaint with hostile work environment claim under Title VII. *See* Pl.'s Opp'n at 9. Any such amendment would be futile.

11

be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits").

A private cause of action under the DCHRA must be filed "within one year of the unlawful discriminatory act, or the discovery thereof." D.C. Code § 2-1403.16; *see also Cesarano v. Reed Smith LLP*, 990 A.2d 455, 464 (D.C. 2010). This action commenced on January 23, 2015. Thus, Bahta can proceed with her claim(s) under the DCHRA only to the extent that it is based on acts occurring on or after January 23, 2014.

"Wrongful termination, an unlawful employment practice, is a discrete act or single occurrence which takes place on the day that it happened." *Cesarano*, 990 A.2d at 464. Bahta does not dispute Renaissance's assertion that she was terminated on January 11, 2014.[2] Instead, Bahta contends the statute of limitations did not begin to run until at least January 23, 2014 when the Peer Review Panel issued its decision denying her appeal of the termination. It is not clear whether her argument is that the termination was not final until the appeal process ended or that the limitations period should be tolled for that period of time. Under either theory, however, her argument would fail. The alleged wrongful act and the resulting injury occurred when the termination decision was made for unlawful reasons. "[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980); *see also Jones v. Howard Univ.*, 574 A.2d 1343, 1346 (D.C. 1990) ("To the extent that [plaintiff] contends that we should treat her discharge of January 14, 1984 as somehow incomplete or tentative because the

---

[2] Moreover, the Peer Review Panel's letter confirms that, at the very least, Bahta received notice of termination and appealed that decision prior to January 23, 2014. The panel's letter denying Bahta's appeal was not issued until January 23. Therefore, the only reasonable inference is that Bahta was terminated before January 23.

grievance proceedings remained pending and could have resulted in her reinstatement, her

position is foreclosed by Supreme Court and other precedent."). Because Bahta was terminated

before January 23, 2014, her January 23, 2015 lawsuit was not filed within one year of the

"discriminatory act" and is therefore time-barred.[3] Accordingly, summary judgment is also

appropriate on the DHCRA claim(s).

### D.      Intentional or Negligent Infliction of Emotional Distress (Count III)

Count III alleges that Renaissance "failed to deter the attacker, terminated Plaintiff, and

maltreated Plaintiff thereafter in ways that inflicted severe emotional distress on Plaintiff which

has been exhibited by physical, mental, and emotional symptoms." Am. Compl. ¶ 23.

Renaissance argues this claim is barred as a matter of law by the Workers' Compensation Act's

("WCA") exclusive remedy provision. In response, Bahta does not dispute that the WCA

provides the exclusive remedy for workplace injuries. *See* D.C. Code §§ 32–1504(a)–(b). Nor

does she dispute that her injuries occurred in the course of her employment or that the WCA

generally covers injuries resulting from "intentional torts occurring at the workplace and

committed by other employees or third parties" such as hers. *Lockhart v. Coastal Int'l Sec., Inc.*,

905 F. Supp. 2d 105, 117 (D.D.C. 2012); *see also* D.C. Code § 32–1501(12). Instead, she

contends her injuries fall within a narrow exception to the WCA because Renaissance intended

for the injuries to occur.

---

[3] There are no separate allegations that the appeal process was the basis for a separate act of discrimination. Moreover, to the extent Bahta's claim is based on a discriminatory course of conduct based on her age, sex, race, or national origin, those actions necessarily occurred during the course of her employment, which ended on January 11. There is no allegation of any discriminatory act persisting beyond the termination. Thus, any claim based on alleged discriminatory conduct is also time-barred. *Cf. Paul v. Howard Univ.*, 754 A.2d 297, 312 (D.C. 2000) (holding discrimination claim time-barred where plaintiff "fail[ed] to provide a date within the one-year statutory period on which any such conduct occurred" (emphasis omitted)).

Bahta is correct that "[t]he only injuries that fall outside the scope of the WCA are injuries specifically intended by the employer to be inflicted on the particular employee who is injured." *Vanzant v. Washington Metro. Area Transit Auth.*, 557 F. Supp. 2d 113, 117 (D.D.C. 2008) (internal quotation marks omitted). Bahta has not demonstrated a genuine issue of material fact as to whether the exception applies in her case. "Specific intent by the employer will not be found even where an employer has knowledge to a substantial certainty that an injury will result from an act." *Doe v. United States*, 797 F. Supp. 2d 78, 84 (D.D.C. 2011) (internal quotation marks omitted); *see also* 9-103 Larson's Workers' Compensation law § 103.03 ("Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury."). "Moreover, workplace injuries caused by the intentional acts of third parties demonstrate specific intent on the part of an employer only where the employer and a third party conspired to injure an employee." *Doe*, 797 F. Supp. 2d at 84 (citing *Grillo v. Nat'l Bank of Wash.*, 540 A.2d 743, 751–54 (1988)). Here, aside from generalized allegations of intent, there is no evidence that demonstrates a genuine issue of material fact as to whether Renaissance consciously, deliberately, or specifically intended Araya to attack Bahta.

Because Bahta seeks redress for emotional distress stemming from injuries that arose out of her employment, the WCA is her exclusive remedy. Accordingly, summary judgment is appropriate as to Count III.

E.    Negligent Hiring and Supervision of the Attacker (Count IV)

Count IV alleges that Renaissance "hired, continued the attacker's employment, ignored the attacker's dangerous conduct toward others, including Plaintiff, and failed to deter the attacker from dangerous conduct, in ways that caused the attack on Plaintiff which severely injured her." Am. Compl. ¶ 28. Renaissance again raises the WCA's exclusive remedy provision as a bar. Common law torts arising from workplace injuries are covered exclusively by the WCA. Thus, the Court will also grant summary judgment to Renaissance on the negligent hiring charge. *Cf. Ramey v. Potomac Elec. Power Co.*, 468 F. Supp. 2d 51 (D.D.C. 2006) (holding negligent hiring claim barred by WCA's exclusive remedy provision); *see also Vanzant*, 557 F. Supp. 2d 113, 116 (D.D.C. 2008) (same); *Tatum v. Hyatt Corp.*, 918 F. Supp. 5, 8 (D.D.C. 1994) (same).

## IV.    Conclusion

For the foregoing reasons, the Motion for Leave to File Plaintiff's Opposition Out of Time (Dkt. No. 21) is GRANTED. Plaintiff's Motion for Continuance or Deferral of Hearing (Dkt. No. 23) is dismissed as MOOT. Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Dkt. No. 16) is GRANTED. Specifically, judgment shall be entered on Counts I through IV and those claims shall be dismissed with prejudice, with the exception of the Title VII claim under Count II, which is dismissed without prejudice for lack of subject matter jurisdiction. An appropriate order shall issue.

January 27, 2015
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

15